No. 26,193.

THE STATE OF KANSAS, *Appellee*, v. L. C. ROSE, *Appellant*.

SYLLABUS BY THE COURT.

ROBBERY—*Third Degree—Sufficiency of Evidence.* On an assignment of error that the conviction of the defendant for robbery in the third degree is not sustained by sufficient evidence, an examination of the evidence is made, and it is held that the evidence is sufficient to uphold the verdict of guilty.

Appeal from Miami district court; JABEZ O. RANKIN, judge. Opinion filed May 9, 1925. Affirmed.

*Alpheus Lane*, and *Karl V. Shauver*, both of Paola, for the appellant.

*Charles B. Griffith*, attorney-general, *Carl V. Tarr*, county attorney, and *S. J. Shively*, of Paola, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: L. C. Rose was convicted of robbery in the third degree and appeals.

In substance the charge in the information was that Rose did rob and take from the person of C. A. Auger $500 by verbally accusing Auger of violations of the prohibitory liquor law and the pretense that one Clem Giles, his associate in crime, was a federal officer, and through threats of arrest and the taking of Auger into custody and by accusations, threats and intimidations in connection with Giles, extorted $500 from him. The statute under which the defendant was convicted is:

"If any person shall, either verbally or by a written or printed communication, accuse or threaten to accuse another of any felony or other crime, or threaten to do any injury to the person or property of anyone, with a view or intent to extort or gain any money or property of any description, belonging to another, and shall, by intimidating him with said accusation or threat, extort or gain from him any money or property, every such offender shall be deemed guilty of robbery in the third degree." (R. S. 21-529.)

The principal error assigned by defendant is that the evidence does not warrant the conviction. Among other things, there was testimony to the effect that on the evening of the holdup Auger visited Rose at the home of his father, and that Rose brought out a jar of whisky to the car out of which both of them drank. It was then proposed that they should drive to the town of Beagle, and as they were traveling along the road in Auger's car they were stopped by Giles, who drew a gun upon them, ordered them out of the car,

found the intoxicating liquor in the car and remarked that he was an officer sent from Topeka to get them. Giles transferred the whisky from the Auger car to that of his own, made Auger get into the Giles car and sit in the front seat with him while Rose sat alone in the back seat. Giles told them that he was going to take them to Paola and turn them over to the sheriff, but before they reached Paola a suggestion was made that the trouble ought to be fixed up in some way. There is a dispute as to whether the suggestion was first made by Rose. Giles then said to them, in substance, "You are worth a lot of money, and if each of you will give me $500 I will turn you loose and drive you back to your car." Rose said he had no money, but would turn over certain mules which he had. Giles then prepared statements for Rose and Auger to sign, in which they acknowledged that liquor had been found in their possession, and to which they attached their names. Auger offered a check for his part of the levy, but Giles refused to take a check and it was arranged that Auger should obtain the money and deliver it to Giles at the Rose home the following morning, at which time Rose should turn over the mules for his part. On the next morning Auger procured the money and took it to the place of payment. Rose was there and informed Auger that Giles had been there but had gone, but that they would go down the road and find him. Rose said that Giles was mad; that he was dangerous, and advised Auger to pay the money to Giles without saying anything to him. They found Giles, to whom Auger gave $500 in currency, whereupon Giles handed Auger the written statement which he had signed and told him to destroy it. Then he handed the jar of liquor out to Auger, which he passed to Rose, who threw it on the ground and broke it. Giles then told Rose to get into the car with him and they drove away together. Nothing was said about Rose turning over mules to Giles. There is conflict as to some of the circumstances stated and of other testimony, but that given in behalf of the state was accepted by the jury.

It is contended that there is a lack of proof that Rose coöperated with Giles in the extortion and robbery or that he lured Auger into the trap set for the robbery. There is little direct proof that Rose conspired with Giles to perpetrate the offense, but it is not necessary that concert of action be established by direct evidence. Circumstantial evidence alone which naturally leads to a belief of guilt beyond a reasonable doubt is sufficient to support a conviction. While

there is little direct evidence that Rose and Giles were coöperating in the plan of robbing Auger, there are some significant circumstances which tend to show concert of action, and that Rose participated in the crime. Rose invited Auger to visit him the evening before the robbery and while Auger could not make the visit on that evening, he did phone Rose that he would come the following evening. When Auger made the call upon Rose the latter brought out a jar of whisky which he left in the car when the drive was made towards Beagle, and to the place where Giles intercepted them and found the jar of whisky which Rose had brought into the car and also a bottle of wine belonging to Auger. When Giles took both of them into custody he kept Auger, who was spoken of as a crippled old man, under his eye and at his side, but allowed the young man Rose to occupy the back seat without special surveillance. While Rose said he did not know the holdup bandit, who was satisfactorily shown to be Giles, it appears that Rose had known him since he was a small boy. Auger had not been acquainted with Giles before the robbery, but subsequently identified him as the bandit. It appears that Giles was not masked that night and although Rose knew him well, he professed not to recognize him. It was arranged, as we have seen, that the money was to be paid at the Rose home and when Auger reached there with the money the following morning Rose admonished him to pay over the money without saying anything to Giles, that he was mad and dangerous. When Auger made his payment there was no turning over of mules by Rose. After the Auger payment it appears that Rose entered the Giles car and they drove away together. A few days later when Auger suggested to Rose that an effort be made to find the bandit, Rose told him that he didn't know the man and could not do anything. On the day following the holdup it appears that Rose accompanied Giles on a trip to La Cygne and from there to Amsterdam, and on this trip he said he told Giles that "A guy tried to fleece me out of some money," but he did not tell Giles any of the details. Auger testified that while Rose claimed to have no money at the time, he met him about a week after the crime and found Rose dressed in a brand-new suit of clothes, hat and everything from top to bottom, which he said he had purchased at Kansas City the previous Saturday. In view of the circumstances related and other testimony in the case, we cannot say that the jury was not warranted in finding Rose guilty of the charge upon which he was convicted.

We find nothing substantial in the complaint that the court unduly limited the cross-examination of the witness Auger.

The judgment is affirmed.

HARVEY, J., not sitting.